OPINION OF THE COURT
Rivera, J.E
In this action by the plaintiff, a medical service provider, to recover first-party no-fault insurance benefits, this Court must address the issue of the plaintiffs burden of proof on a motion for summary judgment in such an action. Specifically, we consider whether, as an element of its prima facie burden, the plaintiff is required to establish the merits of its claim for payment. We conclude that, where, as here, a defendant insurer does not timely and properly deny a claim, the plaintiff is not required to make such a showing. We reaffirm the long-standing precedent that, in this context, the plaintiff makes a prima facie showing of entitlement to judgment as a matter of law by submitting evidence, in admissible form, that the prescribed statutory billing forms were mailed to and received by the defendant insurer, which failed to either pay or deny the claim within the prescribed 30-day period.
I. Factual and Procedural History
On June 20, 2004, Alem Cardenas allegedly sustained personal injuries as a result of an automobile accident. According to the plaintiff, on that date, there was an existing automobile liability insurance policy containing a New York *36 State no-fault endorsement issued by the defendant. The plaintiff allegedly furnished medical services to Cardenas for injuries relating to the subject automobile accident. Cardenas assigned his right to receive no-fault benefits to the plaintiff.
By summons and verified complaint dated September 23, 2005, the plaintiff, as assignee of Cardenas, commenced the instant action to recover no-fault insurance benefits. The plaintiff asserts that (1) it timely submitted bills and claim forms to the defendant for the services it provided to Cardenas, together with proper verification, (2) the defendant did not timely deny or request additional verification, and (3) the claims remained unpaid and outstanding.
In its verified answer, dated March 6, 2006, the defendant asserted 28 affirmative defenses, including that the plaintiff failed to file bills in a timely fashion as prescribed by the New York State Comprehensive Motor Vehicle Insurance Reparations Act (Insurance Law art 51), the medical treatment provided was neither necessary nor “medically indicated,” and payment of the plaintiffs claims was not overdue because of the plaintiffs failure to submit to the defendant “proper proof of the fact and amount of the loss” as required by the Insurance Law.
A. The Plaintiffs Motion for Summary Judgment
By notice of motion dated September 2, 2008, the plaintiff moved, inter alia, for summary judgment on the complaint. In support thereof, the plaintiff attached a copy of the pleadings and a copy of an assignment of benefits form (NF-AOB), pursuant to which Cardenas assigned his no-fault benefits to the plaintiff. The plaintiff also attached eight NF-3 verification forms, used to establish proof of claim (see 11 NYCRR 65-1.1), to document the services allegedly provided by the plaintiff to Cardenas from June 22, 2004, through October 25, 2004, as well as the corresponding amounts for those services. Each NF-3 form has a stamped signature bearing “V Etienne M.D.” The plaintiff further attached seven mailing ledgers stamped by the United States Postal Service.
Additionally, the plaintiff submitted one NF-10 denial of claim form dated November 22, 2004, in which the defendant denied payment of one claim dated November 17, 2004, in the amount of $139. The reason proffered for the denial of that claim was: “Based on the results from the independent medical exam the claimant attended on 9/21/04, which were negative and stated that maximum medical improvement has been achieved, all no-fault benefits are denied as of 9/28/04.”
*37 In further support of its motion, the plaintiff proffered the affidavit of Roman Matatov, who described how the NF-3 verification forms were generated and set forth the procedures for mailing them to the insurer. Matatov stated in his affidavit that he is the president of SUM Billing Corp. (hereinafter SUM Billing), a company that provides services such as verifying insurance coverage, billing, collecting overdue payments, providing information to insurers upon request, and assembling and preparing files for litigation. Matatov further stated: “I supervise the billing and collection relating to No-Fault bills, and I personally carry out mailing of the bills we create” (emphasis added).
Matatov averred that SUM Billing enters into a “business arrangement” with its clients prior to providing services, pursuant to which the clients “are under a business duty to provide [SUM Billing] with the documentation necessary to create a bill, such as initial or intake reports, progress notes, test results and medical reports.” Matatov stated:
“These documents are created near the time in which the events therein described occurred; they are created in the course of the providers’ business; and it is the providers’ business to create these documents as evidence of the services they have rendered. I personally obtain these documents by visiting the providers we serve. The documents are then incorporated into my company’s records, and we rely upon them and the information therein contained in the performance of our business.”
Matatov next described the methods utilized by SUM Billing to create a bill. He explained that SUM Billing would input information provided by its clients into custom-designed software. The software creates NF-3 forms by automatically filling in the statutorily required information.
Matatov then set forth his company’s procedure for mailing the NF-3 form to the insurer, as follows:
“The mailing information of the insurer from which we seek reimbursement on behalf of our clients is automatically inserted on an NF-3 based on the insurer’s name; the billing software also prints this information on the envelope. NF-3s are then printed and inserted into this envelope together with any other necessary document required by insurers or by the circumstances.
*38 “All envelopes ready for mailing are placed in a box, which I personally take to the US Post Office at least once a week or whenever otherwise necessary to respect the statutory deadlines. I retain sole responsibility for the mailing of the documents created by my corporation, and I personally inspect and verify the accuracy and completeness of every envelope set to leave the office” (emphasis added).
Consistent with the procedures he outlined above, Matatov indicated that he mailed the aforementioned eight NF-3 bills to the defendant.
In further support of its motion, the plaintiff submitted the affirmation of its counsel, Gary Tsirelman, dated September 2, 2008. Tsirelman asserted in his affirmation that the plaintiff established, prima facie, its entitlement to judgment as a matter of law through the submission of the NF-3 forms, which included the fact and amounts of loss sustained, and by setting forth that the payment of the benefits were overdue. Tsirelman contended that the burden then shifted to the defendant. Tsirelman argued that the defendant would be precluded from raising any “non-coverage” defenses, since it could not show that it timely denied the claims pursuant to the no-fault regulatory scheme.
B. The Defendant’s Opposition
In opposition to the plaintiffs motion, the defendant submitted the affirmation of its counsel, Jean Kang, dated January 6, 2009, in which Kang countered that the plaintiff had not established a prima facie case since “all of the plaintiffs exhibits are hearsay” and, in order for them to be in admissible form, they had to fall under one of the exceptions to the hearsay rule. Kang contended that Matatov’s affidavit was insufficient to lay a foundation for the admission of the NF-3 forms under the business records exception to the hearsay rule. Kang asserted that “each participant in the chain producing the record, from the initial declarant to the final entrant, must be acting within the course of regular business conduct or the declaration must meet the test of some other hearsay exception.”
Kang claimed that it was not possible to determine from Matatov’s affidavit whether he had any familiarity with the plaintiff and its practices and procedures. Further, Kang argued that Matatov’s affidavit failed to provide any specific information regarding the individual responsible for mailing the specific bills at issue to the defendant. Rather, according to Kang, Matatov’s affidavit was “obviously a template, and fails to provide *39 any specific information at all about the handling of the bill(s) in question, merely providing generalized details about [the] plaintiffs office practices.” Kang concluded that there can be no presumption of mailing by merely making a list of claimants and dates that the claims were purportedly mailed.
C. The Orders of the Civil Court and the Appellate Term
By order entered March 6, 2009, the Civil Court, Kings County, denied that branch of the plaintiffs motion which was for summary judgment on the complaint “for failure to establish a prima facie case.”
By notice of appeal dated April 3, 2009, the plaintiff appealed to the Appellate Term of the Supreme Court for the Second, Eleventh, and Thirteenth Judicial Districts. By order dated February 1, 2011, the Appellate Term affirmed the Civil Court order (see Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co., 31 Misc 3d 21 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]). The Appellate Term relied upon this Court’s decisions and orders in Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co. (55 AD3d 644 [2008]) and Matter of Carothers v GEICO Indem. Co. (79 AD3d 864 [2010]), stating,
“[i]n order for the claim forms to constitute prima facie proof of the fact and the amount of the loss sustained, the affidavit submitted by the plaintiff in support of its motion for summary judgment must lay a sufficient foundation to establish that the claim forms annexed thereto are admissible under the business records exception to the hearsay rule, which allows a document to be used as proof of the ‘act, transaction, occurrence or event’ recorded in the document” (Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co., 31 Misc 3d at 22, quoting CPLR 4518 [a]).
The Appellate Term found that, here, Matatov’s affidavit failed to demonstrate that he had personal knowledge of the plaintiffs practices and procedures and that he was competent to testify about those practices and procedures (Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co., 31 Misc 3d at 24).
By decision and order on motion dated July 6, 2011, this Court granted the plaintiffs motion for leave to appeal from the order of the Appellate Term (2011 NY Slip Op 77673[U] [2011]).
II. Overview of No-Fault’s Statutory and Regulatory Scheme
In 1973, the New York State Legislature enacted the Comprehensive Motor Vehicle Insurance Reparations Act, commonly *40 referred to as the “No-Fault Law” (see Insurance Law art 51). “The primary aims of this new system were to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists” (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 860 [2003], citing Governor’s Mem approving L 1973, ch 13, 1973 McKinney’s Session Laws of NY at 2335). “In furtherance of these objectives, ‘the Superintendent of Insurance . . . adopted regulations implementing the No-Fault Law (Insurance Law art 51), including circumscribed time frames for claim procedures’ ” (New York & Presbyt. Hosp. v Country-Wide Ins. Co., 17 NY3d 586, 589 [2011], quoting Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 317 [2007]).
The statutes and regulations pertaining to no-fault have been characterized by the Court of Appeals as a “ ‘thicket’ ” and “ ‘Rube-Goldberg-like maze’ ” (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 286 [1997, Wesley, J., dissenting]). The “basic no-fault regime” is summarized as follows:
“ ‘The[ ] regulations require an accident victim to submit a notice of claim to the insurer as soon as practicable and no later than 30 days after an accident (see 11 NYCRR 65-1.1, 65-2.4 [b]). Next, the injured party or the assignee . . . must submit proof of claim for medical treatment no later than 45 days after services are rendered (see 11 NYCRR 65-1.1, 65-2.4 [c]). Upon receipt of one or more of the prescribed verification forms used to establish proof of claim, ... an insurer has 15 business days within which to request “any additional verification required by the insurer to establish proof of claim” (11 NYCRR 65-3.5 [b]). An insurer may also request “the original assignment or authorization to pay benefits form to establish proof of claim” within this time frame (11 NYCRR 65-3.11 [c]). Significantly, an insurance company must pay or deny the claim within 30 calendar days after receipt of the proof of claim (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]). If an insurer seeks additional verification, however, the 30-day window is tolled until it receives the relevant information requested *41 (see 11 NYCRR 65-3.8 [a] [1])’ ” (Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d 556, 562-563 [2008], quoting Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d at 317; see Insurance Law § 5106 [a]; Sound Shore Med. Ctr. v New York Cent. Mut. Fire Ins. Co., 106 AD3d 157, 162-163 [2013]).
“A proper denial of [a] claim [for no-fault benefits] must include the information called for in the prescribed denial of claim form (see 11 NYCRR 65-3.4 [c] [11]) and must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated” (St. Vincent’s Hosp. & Med. Ctr. v New Jersey Mfrs. Ins. Co., 82 AD3d 871, 872 [2011] [internal quotation marks omitted]).
An insurer that fails to pay or deny a claim within the 30 days following its receipt of the proof of claim is subject to “substantial consequences” (Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d at 563 [internal quotation marks omitted]). That insurer “is generally precluded from asserting a defense against payment of the claim” (id. [internal quotation marks omitted]). The only exception that the Court of Appeals has carved out is where an insurer raises a defense of lack of coverage (see id.; Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d at 318; Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]; Sound Shore Med. Ctr. v New York Cent. Mut. Fire Ins. Co., 106 AD3d at 162-163). Indeed, the Court of Appeals has concluded that even a claim of fraud must be contested by an insurer within the tight deadlines of the no-fault regime, or else the insurer is precluded from asserting such a claim (see Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d at 565). While the Court of Appeals has recognized that preclusion may require an insurer to pay a no-fault claim it might not have had to honor if it had timely denied the claim, it has emphasized that the provision of “prompt uncontested, first-party insurance benefits” is “part of the price paid to eliminate common-law contested lawsuits” (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d at 285; see Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d at 565-566).
It follows that an insurer must also raise an objection regarding the bona tides of the plaintiffs claim forms within the time *42 schedules contained in the regulations. To conclude otherwise would permit an insurer to disregard the time windows set forth in the regulations and would countenance a belated evidentiary objection. By so doing, an insurer would be permitted to frustrate core objectives of the no-fault regime, which are “ ‘to provide a tightly timed process of claim, disputation and payment’ ” (Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d at 319, quoting Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d at 281), to reduce the burden on the courts, and to avoid protracted and costly litigation.
III. The Plaintiffs Prima Facie Burden and This Court’s Decision in Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co. (55 AD3d 644 [2008])
A plaintiffs prima facie showing of entitlement to judgment as a matter of law is defined, controlled, and circumscribed by the nature of the claim asserted, the elements of the cause of action pleaded, and the facts to be proven. This Court has consistently held that
“[i]n an action to recover no-fault benefits, a plaintiff makes a prima facie showing of entitlement to judgment as a matter of law by submitting evidentiary proof that the prescribed statutory billing forms were mailed to and received by the relevant insurance carrier, and that payment of no-fault benefits was overdue” (Westchester Med. Ctr. v Progressive Cas. Ins. Co., 89 AD3d 1081, 1082 [2011]; see Westchester Med. Ctr. v GMAC Ins. Co. Online, Inc., 80 AD3d 603, 604 [2011]; New York & Presbyt. Hosp. v Countrywide Ins. Co., 44 AD3d 729, 730 [2007]; New York & Presbyt. Hosp. v Allstate Ins. Co., 29 AD3d 547, 547 [2006]).
Our sister appellate courts have likewise articulated the same standard (see e.g. Sunshine Imaging Assn./WNY MRI v Government Empls. Ins. Co., 66 AD3d 1419, 1420 [2009]; Countrywide Ins. Co. v 563 Grand Med., P.C., 50 AD3d 313, 314 [2008]; LMK Psychological Servs., P.C. v Liberty Mut. Ins. Co., 30 AD3d 727, 728 [2006]).
In 2008, however, this Court held in Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co. (55 AD3d at 644) that “[t]he plaintiffs failed to establish their prima facie entitlement to judgment as a matter of law.” In Art of Healing, this Court, in effect, added a requirement to the plaintiff’s prima facie *43 burden, stating, without explanation, that “[t]he plaintiffs [ ] medical service providers failed to demonstrate the admissibility of their billing records under the business records exception to the hearsay rule” (id.).
Art of Healing has been cited by this Court on only one occasion (see Matter of Carothers v GEICO Indem. Co., 79 AD3d 864 [2010]), and we are not aware of any other decision of this Court, in the context of no-fault insurance benefits litigation, requiring a plaintiff medical provider to lay a foundation for the admission of their claim forms under the business records exception to the hearsay rule in order to establish a prima facie case. As stated above, this Court has consistently held that a plaintiff medical service provider makes a prima facie showing of entitlement to judgment as a matter of law by submitting evidentiary proof that the prescribed statutory billing forms were mailed to and received by the relevant insurance carrier, and that payment of no-fault benefits was overdue (see Westchester Med. Ctr. v Progressive Cas. Ins. Co., 89 AD3d at 1082; Westchester Med. Ctr. v GMAC Ins. Co. Online, Inc., 80 AD3d at 604; New York & Presbyt. Hosp. v Countrywide Ins. Co., 44 AD3d at 730; New York & Presbyt. Hosp. v Allstate Ins. Co., 29 AD3d at 547).
The Appellate Term has cited to Art of Healing on at least 99 occasions. In several of those cases, the Appellate Term found that the plaintiff failed to establish its prima facie burden where it relied upon the affidavit of a biller who did not possess personal knowledge of the plaintiff’s business practices and procedures so as to establish that the claim forms annexed to the plaintiff’s moving papers were admissible under the business records exception to the hearsay rule (see e.g. Raz Acupuncture, P.C. v GEICO Gen. Ins. Co., 33 Misc 3d 137[A], 2011 NY Slip Op 52064[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]; D & R Med. Supply, Inc. v Safeco Ins. Co., 28 Misc 3d 127[A], 2010 NY Slip Op 51179[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2010]; DJS Med. Supplies, Inc. v Travelers Prop. Cas. Ins. Co., 23 Misc 3d 128[A], 2009 NY Slip Op 50584[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009]; Great Wall Acupuncture, P.C. v New York Cent. Mut. Fire Ins. Co., 22 Misc 3d 136[A], 2009 NY Slip Op 50294[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009]). Apparently, the Appellate Term has interpreted Art of Healing to require a plaintiff medical provider, as part of its prima facie burden, to establish that the claim forms annexed to the summary judgment motion are admissible as proof of the acts, *44 transactions, occurrences, or events recorded therein pursuant to CPLR 4518 (a). Thus, in essence, they have required proof of the merits of the claim, in addition to proof of the billing.
The Art of Healing Anomaly
We now conclude that this Court’s holding in Art of Healing constitutes an anomaly, a jurisprudential drift from this Court’s well-established precedent. Otherwise simple and straightforward procedural and substantive principles relating to a plaintiff medical service provider’s prima facie burden were conflated in Art of Healing. This created additional confusion in the already murky realm of no-fault insurance benefits.
In order to unravel the disarray engendered by Art of Healing, a basic analytical template is required. “Proof,” a word often misunderstood and misapplied, is defined as “[t]he establishment or refutation of an alleged fact by evidence” (Black’s Law Dictionary 1334 [9th ed 2009]). As stated more than a century ago, “[e]vidence is the medium of proof; proof is the effect of evidence” (People v Beckwith, 108 NY 67, 73 [1888]). We must identify and clarify, first, “what” the plaintiff medical provider must prove in order to meet its prima facie burden in a no-fault insurance case and, second, “how” the plaintiff meets that burden. In the context of no-fault insurance, “what” must be shown is proof of billing, namely, that the billing forms were mailed to and received by the defendant insurer, and that the insurer failed to either pay or deny the claim within the requisite 30-day period (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [a] [1]; Westchester Med. Ctr. v Hereford Ins. Co., 95 AD3d 1306 [2012]; NYU-Hosp. for Joint Diseases v American Intl. Group, Inc., 89 AD3d 702, 703 [2011]; Mount Sinai Hosp. v Country Wide Ins. Co., 85 AD3d 1136, 1137 [2011]). The requirement in Insurance Law § 5106 (a) that a claimant must submit “proof of the fact and amount of loss sustained” in order to trigger the 30-day period in which to pay or deny a claim refers to the contents of the billing forms, not the merits of the claim. To interpret these words to mean that a claimant must prove the merits of its claim prior to triggering the 30-day period after which the first-party benefits become overdue would defeat the purpose of the 30-day requirement, since a defendant insurer could always delay the onset of the 30-day period by arguing that the forms submitted were inadequate. Such an interpretation would allow a defendant insurer to circumvent the requirement of proffering a denial or requesting additional verification within 30 days simply by arguing *45 that the forms submitted did not establish the merits of the claim. The “how” evidentiary component of the plaintiffs proof is met by, inter alia, the affidavit of a billing agent or an employee of the medical provider; that is, someone with personal knowledge of the plaintiffs billing methods (see e.g. NYU Hosp. for Joint Diseases v Country Wide Ins. Co., 84 AD3d 1043 [2011]; New York Hosp. Med. Ctr. of Queens v Country Wide Ins. Co., 82 AD3d 723 [2011]; Westchester Med. Ctr. v Progressive Cas. Ins. Co., 51 AD3d 1014, 1017 [2008]; Westchester Med. Ctr. v Safeco Ins. Co. of Am., 40 AD3d 984 [2007]). The billing agent will (1) attest that he/she personally sent the billing forms to the insurer, that the insurer received the same, and that the insurer failed to pay or deny the claim within the requisite 30-day period, or (2) set forth the procedures customarily utilized in the ordinary course of its business regarding the mailing/receipt of such forms and that the insurer failed to pay or deny the claim within the requisite 30-day period. As part of its prima facie showing, the plaintiff is not required to show that the contents of the statutory no-fault forms themselves are accurate or that the medical services documented therein were actually rendered or necessary. Stated another way, the plaintiff is not required to establish the merits of the claim to meet its prima facie burden. To the extent that Art of Healing imposes a “business record” requirement obliging the plaintiff to establish the truth or the merits of the plaintiffs claim, we overrule Art of Healing.
In opposition to a plaintiffs prima facie showing, if no denial of claim was proffered, a defendant insurer may avail itself of evidentiary objections, such as the business record exception to the rule against hearsay pursuant to CPLR 4518, only to challenge the plaintiffs proof of billing relating to the mailing or receipt of the billing forms and the defendant’s alleged failure to deny or pay the claim within the requisite time periods. Therefore, where the defendant insurer fails to proffer a timely denial of claim to the plaintiff’s proof of billing, or request additional verification within the time frames set forth in the no-fault regulations (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.5, 65-3.8 [c]), the insurer is precluded from raising an evidentiary challenge to the admissibility of the documents under the business records exception to the hearsay rule with regard to the contents of the billing forms. To countenance a different result would render the entire no-fault regulatory claim and payment process meaningless. The purpose of the No-Fault Law is to keep claims out of court, and to accomplish that *46 purpose, the regulations must be followed. The onus is upon the defendant insurer to either pay the medical provider’s claim or timely deny the claim. An insurer’s penalty for its failure to proffer a timely and proper denial of claim is that it will be precluded from objecting to a claim based upon a purported deficiency in the claim. Thus, an insurer’s challenges and objections to the medical provider’s prescribed statutory billing forms must be made within the circumscribed time frames for claim procedures. Challenges and objections regarding whether the services were, in fact, rendered, were causally related to a covered accident, or were medically necessary are not available to the defendant insurer after the onset of litigation unless the insurer proffered a timely and proper denial of claim within the prescribed time frame.
IV Application of the Law to the Instant Case
Based on the foregoing, with the exception of the plaintiff’s claim dated November 17, 2004, in the amount of $139, the plaintiff established, prima facie, its entitlement to judgment as a matter of law by demonstrating that its prescribed statutory billing forms used to establish proof of claim (see 11 NYCRR 65-1.1) were mailed to and received by the defendant and that the defendant failed to either timely pay or deny the claims (see Insurance Law § 5106; 11 NYCRR 65-3.8 [a] [1]; Westchester Med. Ctr. v Progressive Cas. Ins. Co., 89 AD3d at 1082; Westchester Med. Ctr. v GMAC Ins. Co. Online, Inc., 80 AD3d at 604). However, with regard to the plaintiff’s claim dated November 17, 2004, in the amount of $139, we note that the plaintiff s summary judgment motion papers included the defendant’s denial of that claim dated November 22, 2004. Contrary to the plaintiffs contention, that denial of claim was, in fact, timely and sufficient (see Forrest Chen Acupuncture Servs., P.C. v GEICO Ins. Co., 54 AD3d 996, 996-997 [2008]; Westchester Med. Ctr. v Allstate Ins. Co., 45 AD3d 579, 580 [2007]). Therefore, as to that particular claim, the plaintiff did not meet its prima facie burden, and we need not consider the defendant’s opposition to that branch of the plaintiff’s motion (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
The defendant’s contention that the plaintiff failed to establish that the bills were, in fact, mailed and received is without merit. “Generally, ‘proof that an item was properly mailed gives rise to a rebuttable presumption that the item was received by the addressee’ ” (New York & Presbyt. Hosp. v Allstate Ins. Co., *47 29 AD3d at 547, quoting Matter of Rodriguez v Wing, 251 AD2d 335, 336 [1998]). “ ‘The presumption may be created by either proof of actual mailing or proof of a standard office practice or procedure designed to ensure that items are properly addressed and mailed’ ” (New York & Presbyt. Hosp. v Allstate Ins. Co., 29 AD3d at 547, quoting Residential Holding Corp. v Scottsdale Ins. Co., 286 AD2d 679, 680 [2001]). Such “office practice must be geared so as to ensure the likelihood that [the correspondence] is always properly addressed and mailed” (Nassau Ins. Co. v Murray, 46 NY2d 828, 830 [1978]; see Matter of Eveready Ins. Co. v France, 66 AD3d 776, 776 [2009]).
Here, the plaintiffs submissions gave rise to a presumption that the prescribed verification forms were received by the defendant. In his affidavit, Matatov stated that the billing forms were mailed to the defendant, that he possessed personal knowledge of the office practice and procedure used by his company to ensure that items were properly addressed and mailed, and that he personally carried out the mailing of the bills his company creates. The signed and date-stamped U.S. Postal Service mailing ledger, which Matatov stated was kept in the regular course of business, also indicated the date on which each bill was mailed.
In opposition to those claims where the plaintiff did satisfy its prima facie burden, the defendant failed to raise a triable issue of fact. The defendant failed to timely contest the adequacy of those claim forms during the prescribed no-fault regulatory time periods (see 11 NYCRR 65-3.5). The defendant’s failure to timely request additional verification to establish proof of claim, object to the adequacy of the claim forms, or otherwise deny the claim precludes it from raising the instant defense; namely, that the plaintiff failed to demonstrate the admissibility of its claim forms under the business records exception to the rule against hearsay (see Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d at 563; Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d at 318). Simply stated, the defendant must pay those claims.
To the extent that the dissent has articulated concerns with the instant opinion, I must emphasize the following points in order to crystallize the majority’s holding. First, this Court is not overturning or abrogating the principle that a plaintiff seeking to recover first-party no-fault benefits must establish a prima facie case. Rather, we are applying the well-established precedent of this Court and the Court of Appeals relating to the *48 plaintiff’s prima facie burden. There is no dispute that the plaintiff has a burden and must satisfy it by submitting evidence in admissible form. Second, my dissenting colleagues comment upon an alleged “rampant fraud besieging New York’s no-fault system” (dissenting op at 50). This is matter dehors the record, and plays no part in the legal analysis and the issues presented on this appeal. Third, the dissent apparently disapproves of the long-standing precedent set forth in case law regarding a plaintiff’s prima facie showing of entitlement to judgment as a matter of law in the context of no-fault when it states that those cases “reflect the standard under which a plaintiff may establish, prima facie, that it is entitled to the remedy of preclusion” (dissenting op at 58-59). However, in Fair Price Med. Supply Corp. v Travelers Indem. Co. (10 NY3d at 565), the Court of Appeals stated that preclusion required the insurer to pay a no-fault claim it might not have been obligated to honor if timely disclaimed. As a “tradeoff of the no-fault reform,” insurers can “contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period” (id. at 565-566). Fourth, our goal herein is to correct the confusion that ensued and, in fact, continues to permeate this area of law as a result of Art of Healing. We departed from our precedent when we decided Art of Healing and, as a court of stare decisis, we must restore consistency in our cases. The plaintiffs prima facie burden is satisfied by “proof of billing.” The defendant insurer’s penalty of preclusion is self-inflicted by its failure to proffer a proper and timely denial of claim prior to the onset of litigation.
We do not address the issues raised which pertain to that branch of the plaintiffs motion which was for leave to amend the complaint, as that branch of the motion remains pending and undecided (see Katz v Katz, 68 AD2d 536, 542-543 [1979]).
Accordingly, the order dated February 1, 2011, is modified, on the law, by deleting the provision thereof affirming the order dated March 6, 2009, and substituting therefor a provision modifying the order dated March 6, 2009, by deleting the provision thereof denying that branch of the plaintiffs motion which was for summary judgment on the complaint, and substituting therefor a provision granting that branch of the motion, except as to the claim dated November 17, 2004, in the amount of $139; as so modified, the order dated February 1, 2011, is affirmed, and the matter is remitted to the Civil Court, Kings County, to calculate the amount owed to the plaintiff for no- *49 fault benefits, and to determine whether the plaintiff is entitled to statutory interest and attorney’s fees (see Insurance Law § 5106 [a]; 11 NYCRR 65-4.6).